Alexander HILLMAN, Appellant,

v.

**MUNICIPALITY OF ANCHORAGE,**
Appellee.

No. A–6191.

Court of Appeals of Alaska.

June 20, 1997.

Kelly E. Gillilan–Gibson, James E. Gorton & Associates, Anchorage, for Appellant.

James L. Walker, Assistant Municipal Prosecutor, and Mary K. Hughes, Municipal Attorney, Anchorage, for Appellee.

Before COATS, C.J., MANNHEIMER, J., and JOANNIDES, District Court Judge.*

## OPINION

MANNHEIMER, Judge.

Alexander Hillman pleaded no contest to driving while intoxicated, a violation of Anchorage Municipal Code § 9.28.020. Because Hillman had two prior convictions for this offense, the district court ordered forfeiture of Hillman's vehicle—a required penalty under § 9.28.020(C)(5)(b).

Hillman alleges that his vehicle is worth $8000. Based on this appraisal, Hillman contends that the forfeiture of his vehicle constitutes a prohibited "excessive fine" within the meaning of the Eighth Amendment to the United States Constitution and Article I, Section 12 of the Alaska Constitution.[1] Hillman also contends that forfeiture of an $8000 vehicle violates Alaska law because, under AS 12.55.035(b), the maximum fine for a class A misdemeanor is $5000.

We assume for purposes of deciding this case that Hillman's vehicle is indeed worth $8000. Nevertheless, as explained below, we reject both Hillman's constitutional argument and his statutory argument. We therefore affirm the forfeiture of his vehicle.

### Our jurisdiction to entertain this appeal

Before addressing the merits of Hillman's arguments, we first must answer the Municipality's contention that Hillman has no right to appeal the forfeiture and that this court has no jurisdiction to hear Hillman's appeal.

The Municipality relies on AS 22.07.020(c), which states:

> The court of appeals has jurisdiction to review ... (2) the final decision of the district court on a sentence imposed by it if the sentence exceeds 120 days of unsuspended incarceration for a misdemeanor offense.

The district court sentenced Hillman to 360 days' imprisonment with 300 days suspended, or 60 days to serve. Because Hillman received only 60 days of unsuspended incarceration, the Municipality argues that this court has no jurisdiction to hear his appeal.[2]

■ As we explain in more detail below, we do not interpret AS 22.07.020(c) as prohibiting this court from reviewing any aspect of a district court's sentencing decision when the defendant receives 120 days or less to serve. This court retains the right to review an illegal sentence, regardless of how much (or how little) imprisonment is imposed on the defendant.

■ AS 22.07.020(c) was intended to restrict this court's jurisdiction to hear sentence appeals from the district court; this jurisdictional provision complements the new restrictions on district court sentence appeals embodied in the 1995 amendments to the sentence appeal statute, AS 12.55.120. Under the 1995 amendment to AS 12.55.120(d), district court defendants may not pursue a sentence appeal unless they receive more than 120 days to serve. In this context, a "sentence appeal" is an appeal in which the defendant concedes the legality of the sentence but contends that the sentencing judge abused his or her discretion by imposing an unduly harsh punishment. See Rozkydal v. State, 938 P.2d 1091, 1093 (Alaska App.1997). The legislature's simultaneous amendment of AS 22.07.020(c)—the insertion of the phrase "if the sentence exceeds 120 days of unsuspended incarceration"—was intended as the

---

* Sitting by assignment of the chief justice made pursuant to Article IV, Section 16 of the Alaska Constitution.

1. Both provisions contain identical wording: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

2. Paradoxically, the Municipality urges us to treat Hillman's appeal as a petition for review and to reach the merits of Hillman's contentions. If, as the Municipality asserts, this court has no jurisdiction "to review" the district court's decision, then this jurisdictional limitation would seem to encompass both forms of appellate review—appeals and petitions.

jurisdictional counterpart to the new restriction on sentence appeals.

Hillman's appeal, however, is not a "sentence appeal". Hillman contends that his sentence is illegal. This court continues to possess the authority to review claims that a sentence is illegal, even when the sentence does not exceed 120 days to serve. (Those readers who believe this conclusion is self-evident may skip the rest of this section.)

The current version of AS 22.07.020(c) was enacted in 1995 as part of the Alaska Legislature's re-working of various aspects of criminal procedure. *See* SLA 1995, ch. 79. In this 1995 session law, the legislature amended AS 12.55.120 (the sentence appeal statute) to limit the right of sentence appeal. *See* SLA 1995, ch. 79, §§ 7–8. Now, defendants convicted of felonies can pursue a sentence appeal only if they receive a composite sentence exceeding 2 years to serve. AS 12.55.120(a). Similarly, defendants convicted of misdemeanors in district court can pursue a sentence appeal only if they receive a composite sentence exceeding 120 days to serve. AS 12.55.120(d).

At the same time, the legislature amended three provisions of Title 22 to reflect corresponding limits on the judiciary's jurisdiction to hear sentence appeals. The legislature amended AS 22.07.020(b), the statute governing this court's jurisdiction to hear sentence appeals from the superior court. SLA 1995, ch. 79, § 11. The legislature also amended AS 22.07.020(c), the statute governing this court's jurisdiction to hear appeals from the district court. SLA 1995, ch. 79, § 12. And, because the superior court also has jurisdiction to review decisions of the district court, the legislature amended AS 22.10.020(f), the statute governing the superior court's jurisdiction to hear sentence appeals from the district court. SLA 1995, ch. 79, § 13.

Recently, in *Rozkydal v. State,* 938 P.2d 1091 (Alaska App.1997), we interpreted the revised sentence appeal statute, AS 12.55.120. We clarified that the appeals governed by AS 12.55.120 are premised on the assumption that the defendant's sentence was lawfully imposed. In a sentence appeal, the defendant asserts that a lawful sentence is excessive—*i.e.,* that it constitutes an abuse of sentencing discretion. Hillman, however, asserts that his sentence is illegal—in fact, unconstitutional. Thus, Hillman's appeal is not a "sentence appeal" governed by AS 12.55.120, and his assertions of error are appealable regardless of the length of his sentence. *Rozkydal,* 938 P.2d at 1093.

Although we clarified the meaning of AS 12.55.120 in *Rozkydal,* a potential problem of statutory interpretation still exists with regard to this court's jurisdictional statute. The problem is that AS 22.07.020(c) (the portion of the statute that gives this court jurisdiction over district court sentence appeals) does not specifically refer to "sentence appeals". Instead, AS 22.07.020(c) declares that this court has "jurisdiction to review ... the final decision of the district court on a sentence imposed by it if the sentence exceeds 120 days of unsuspended incarceration".

The Municipality construes this provision as encompassing more than simply the "sentence appeals" defined in *Rozkydal.* The Municipality reads AS 22.07.020(c) as barring the court of appeals from reviewing *any* aspect of a sentence imposed by the district court unless the defendant received more than 120 days to serve. We, however, do not believe that this is a sensible interpretation of the statute.

The problem is not specific to AS 22.07.020(c). Both of the sentence appeal provisions in AS 22.07.020 are potentially ambiguous. For instance, AS 22.07.020(b) gives this court jurisdiction to "hear appeals of unsuspended sentences of imprisonment ... imposed by the superior court on the grounds that the sentence is excessive or ... too lenient". This statutory language conceivably could be read as a limitation on this court's power of review—restricting our review of superior court sentences to the issues of excessive harshness or leniency. Under such an interpretation, we would have no authority to review a superior court sentence on the ground that it was illegal or that it was imposed in an unlawful manner. However, the legislative history of both AS 22.07.020(b) and 020(c) shows that such an interpretation is mistaken.

The wording of AS 22.07.020(b) actually predates the creation of the court of appeals. This statutory provision originated in SLA 1969, ch. 117, sec. 1—legislation that was enacted in response to the supreme court's decision in *Bear v. State*, 439 P.2d 432 (Alaska 1968). In *Bear*, the supreme court held that, absent legislative authorization, it had no authority to review a lawful sentence "for abuse of discretion"—that is, for excessive severity or leniency. *Id.* at 433, 435. The supreme court did not question its authority to decide cases in which the defendant claimed that the sentence was illegal, or cases in which the defendant claimed that the sentencing procedures were flawed. *Id.* at 436, 438. The issue presented in *Bear* was much narrower: whether the court had the authority to hear an appeal in which the defendant conceded the legality of the sentence but argued that the sentence constituted an abuse of sentencing discretion. *Id.* The court ruled that it had no such authority.

In response, the legislature enacted a new statute, AS 12.55.120, that explicitly authorized sentence appeals. *See* SLA 1969, ch. 117, sec. 4. At the same time, the legislature added a new subsection (b) to the supreme court's jurisdictional statute (AS 22.05.010) that confirmed the supreme court's jurisdiction to hear the now-authorized sentence appeals. *See* SLA 1969, ch. 117, sec. 1. The pertinent language of former AS 22.05.010(b) vested the supreme court with "jurisdiction to hear appeals of sentences of imprisonment lawfully imposed by the superior court[ ] on the grounds that the sentence is excessive or too lenient".

Interpreting this jurisdictional provision in context, it is clear that the provision was not intended to limit the supreme court's review of sentences to the issues of excessive harshness or leniency. Rather, the provision was intended to expand the supreme court's power of review to include issues of excessive harshness or leniency.

In 1980, when the legislature created the court of appeals, the legislature took the sentence appeal language from the supreme court's jurisdictional statute, AS 22.05.010(b), and placed this language in AS 22.07.020(b). *See* SLA 1980, ch. 12, sec. 1. The legislature then drafted a second sentence appeal provision, AS 22.07.020(c)(2), to give this court jurisdiction over district court sentence appeals.

(A second sentence appeal provision was needed because district court litigants had never had a right of direct appeal to the supreme court; thus, no clause of the supreme court's jurisdictional statute dealt with district court sentence appeals.[3] When the court of appeals was created, the legislature chose to give district court criminal litigants the choice of appealing either to the superior court or to the court of appeals. *See* AS 22.07.020(d), enacted in SLA 1980, ch. 12, sec. 1. Thus, the legislature had to add language to AS 22.07.020 authorizing the court of appeals to hear district court sentence appeals. That language ended up in AS 22.07.020(c).)

When the legislature drafted AS 22.07.020(c), it did not use the language of the sibling provision, AS 22.07.020(b) (governing sentence appeals from the superior court). Clause (2) of AS 22.07.020(c) declares that this court has authority to review "the final decision of the district court on a sentence imposed by it". But although the legislature phrased AS 22.07.020(c)(2) differently from AS 22.07.020(b) (and differently from AS 22.10.010(a), the statute that vests the superior court with jurisdiction to hear district court sentence appeals), the intent of AS 22.07.020(c) appears to have been simply to vest this court with jurisdiction over district court sentence appeals.

The 1995 amendment to AS 22.07.020(c)(2) did not alter the operative language of the statute; the 1995 amendment simply appended the phrase "if the sentence exceeds 120 days of unsuspended incarceration for a misdemeanor offense". This additional language reflects the amendment to the sentence appeal statute, AS 12.55.120(d), which now restricts district court sentence appeals

---

**3.** In *Galaktionoff v. State*, 486 P.2d 919, 920 n. 3 (Alaska 1971), the supreme court noted this omission. The court nevertheless ruled that, by virtue of the clause in AS 22.05.010(a) giving the court "final appellate jurisdiction in all actions and proceedings", the court had the authority to review decisions of the superior court in district court sentence appeals.

to defendants whose composite time to serve exceeds 120 days.

Based on this legislative history, we conclude that AS 22.07.020(c)(2) was intended to confirm that the court of appeals has jurisdiction to hear sentence appeals from the district court. We reject the Municipality's suggestion that the statute was intended to prevent this court from reviewing any aspect of a district court sentence unless the sentence exceeds 120 days to serve.

We note that the Municipality's interpretation of AS 22.07.020(c) would lead to absurd results. If in fact the court of appeals lacked jurisdiction to review any aspect of a district court sentence of less than 120 days' unsuspended incarceration, then this court would presumably be powerless to intervene when a district court judge sentenced a defendant to jail for 100 days for a class B misdemeanor (a class of offense punishable by no more than 90 days' imprisonment—*see* AS 12.55.135(b)), or when a district court judge sentenced a defendant to 30 days for negligent driving (an offense that is not punishable by imprisonment—*see* AS 28.35.045(c); AS 28.40.050(c)-(d)).

Moreover, we note that AS 22.07.020(e) vests this court with wide-ranging discretionary jurisdiction to review appellate decisions of the superior court. The superior court is vested with plenary jurisdiction over appeals from the district court. See AS 22.10.020(d), which gives the superior court "jurisdiction in all matters appealed to it from a subordinate court". Under the Municipality's interpretation of AS 22.07.020(c), there would be many instances in which the court of appeals would lack jurisdiction to hear a direct appeal from the district court, but we would have jurisdiction to review the same issues if the defendant first appealed to the superior court and then brought a petition for hearing to this court. "In ascertaining the legislature's intent, this court 'is obliged to avoid construing statutes in a way that leads to patently absurd results or to defeat of the obvious legislative purpose behind the statute'." *Turney v. State*, 922 P.2d 283, 292 (Alaska App.1996) (quoting *State v. Lowrence*, 858 P.2d 635, 638 (Alaska App.1993)).

For all of these reasons, we reject the Municipality's contention that AS 22.07.020(c)(2) was intended to bar this court from correcting any and all illegalities in district court sentences of 120 days or less. Instead, we conclude that AS 22.07.020(c)(2) refers to sentence appeals from the district court, and that the statute's reference to unsuspended sentences of more than 120 days was intended to incorporate the limitation placed on district court sentence appeals by AS 12.55.120(d).

We turn now to the merits of Hillman's arguments that his forfeiture is illegal.

### Is forfeiture of Hillman's vehicle an "excessive fine"?

Under Anchorage Municipal Code § 9.28.020(C)(5), if a person is convicted of driving while intoxicated for a second or subsequent time within 10 years, and if the person "has any interest in the vehicle used in the commission of the offense, the [sentencing] court shall order that ... the person's interest in the vehicle be forfeited to the [Municipality of Anchorage]". Hillman had two prior convictions, so the district court ordered his vehicle forfeited to the Municipality.

As noted above, Hillman contends that this forfeiture is unconstitutional. He claims that his vehicle is worth $8000, and he further claims that, when a person's offense is driving while intoxicated, the forfeiture of property worth that much is an "excessive fine" in violation of the federal and state constitutions.

The law distinguishes between *in personam* forfeitures, which are inflicted as punishment for a crime, and *in rem* forfeitures, which can be inflicted on property owners who are themselves innocent of crime, if the government proves that the property is contraband or is connected to the commission of a criminal act. *See Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 684, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452 (1974); *The Palmyra*, 12 Wheat. 1, 14–15, 6 L.Ed. 531 (1827). The forfeiture of Hillman's vehicle as punishment for his own criminal conduct is an *in personam* forfei-

ture. The United States Supreme Court has held that the Eighth Amendment's proscription on "excessive fines" extends to *in personam* forfeitures. *Alexander v. United States,* 509 U.S. 544, 558–59, 113 S.Ct. 2766, 2775–76, 125 L.Ed.2d 441 (1993). Thus, the government's power to order forfeiture of Hillman's vehicle is potentially limited by the Eighth Amendment.

The ultimate question in assessing Hillman's Eighth Amendment claim is whether the forfeiture is grossly disproportionate to his crime. *See generally Harmelin v. Michigan,* 501 U.S. 957, 996–1005, 111 S.Ct. 2680, 2702–07, 115 L.Ed.2d 836 (1991) (interpreting the Eighth Amendment not to require strict proportionality between a crime and a sentence, but to forbid only "extreme sentences that are grossly disproportionate to the crime"). A similar test is used for judging excessiveness of punishment under the Alaska Constitution:

> The Alaska Supreme Court has consistently held that the Alaska Constitution does not require that penalties be proportionate to the offense. Only punishments that are "so disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice" [are] cruel and unusual under Alaska's Constitution. *See Thomas v. State,* 566 P.2d 630, 635 (Alaska 1977); *Green v. State,* 390 P.2d 433, 435 (Alaska 1964).

*McNabb v. State,* 860 P.2d 1294, 1298 (Alaska App.1993).

Hillman first argues that the district court committed procedural error by summarily rejecting Hillman's "excessive fine" contention. Hillman asserts that whenever a criminal defendant alleges that he or she is being subjected to a constitutionally excessive forfeiture, the sentencing court is obliged to conduct a particularized analysis of the proportionality of that forfeiture to the defendant's conduct in committing the crime. Hillman points out that several federal appellate circuits have established criteria for judging the proportionality of a forfeiture,

criteria designed to be applied on a case-by-case basis. *See United States v. Certain Real Property Located at 11869 Westshore Drive,* 70 F.3d 923 (6th Cir.1995); *United States v. Real Property Located in El Dorado, California,* 59 F.3d 974, 985–86 (9th Cir. 1995).[4]

The federal case law that Hillman cites is not directly on point. These federal cases deal with *in rem* forfeitures—forfeitures that are based, not on the criminal culpability of the property owner, but on the nexus between the property and criminal conduct (regardless of who committed the crime). As we pointed out above, the forfeiture of Hillman's vehicle was an *in personam* forfeiture—a forfeiture based on Hillman's personal guilt of a criminal offense. When a court is dealing with *in personam* forfeiture, there is little point to holding a hearing on some of the criteria listed in the federal cases. For example, *El Dorado* directs a court to examine "whether the [property] owner was negligent or reckless in allowing the illegal use of [the] property" and "whether the owner was directly involved in the illegal activity". 59 F.3d at 986. Because an *in personam* forfeiture of property is premised on the defendant's conviction of a crime, these factors are self-evident.

■ Moreover, the federal courts agree that when a defendant claims that a forfeiture amounts to an "excessive fine", the burden is ultimately on the defendant to prove that the forfeiture is grossly disproportionate to the defendant's offense. *See 11869 Westshore Drive,* 70 F.3d at 930; *El Dorado,* 59 F.3d at 985. It thus appears that, even under the federal cases that require a "proportionality" analysis of forfeitures, a sentencing court is obliged to hold a special hearing to investigate a defendant's Eighth Amendment claim only if the defendant first alleges facts that raise a reasonable possibility that the forfeiture is constitutionally excessive.

---

4. The Sixth Circuit's opinion in *11869 Westshore Drive* contains a lengthy discussion of the case law in this area. 70 F.3d at 927–930. From that discussion, it appears that the federal circuits are split on the question of whether the concept of proportionality applies to *in rem* forfeitures. Moreover, among the federal circuits that do require proportionality of *in rem* forfeitures, the circuits use differing criteria to assess that proportionality.

■ Hillman presents no facts or cases suggesting that forfeiture of a vehicle worth $8000 is "grossly disproportionate" to his offense of repeat drunk driving. In fact, Hillman concedes that the most pertinent case he could find goes against him. In *State v. Ziepfel,* 107 Ohio App.3d 646, 669 N.E.2d 299 (1995), the defendant was convicted of his fourth drunk driving offense. The Ohio Court of Appeals upheld forfeiture of Ziepfel's vehicle (a particularly expensive motorcycle, valued at between $23,000 and $30,000) against Ziepfel's claim that forfeiture of this vehicle constituted an "excessive fine" under the Eighth Amendment. The court concluded that Ziepfel's case did not present "one of those rare situations where the forfeiture is so grossly disproportionate to the offense as to constitute an excessive fine". *Ziepfel,* 669 N.E.2d at 304.

Hillman concedes that *Ziepfel* may be "persuasive", but he points out that *Ziepfel* is not "binding" on this court. This is true. However, in this case, "persuasive" is sufficient. Given the fact that *Ziepfel* upheld a much greater forfeiture under similar circumstances, and given the fact that Hillman has presented nothing to suggest that his case is "one of those rare situations" where the Constitution bars the government from enforcing the penalty specified by law for his offense, we reject Hillman's contention that his case must be remanded to the trial court for a special Eighth Amendment hearing. Our ruling is the same regarding Hillman's state constitutional claim.

■ Hillman's remaining argument is that the amount of his forfeiture ($8000) exceeds the maximum monetary penalty for his offense. Hillman relies on AS 12.55.035(b)(3), which declares that a defendant convicted of

a class A misdemeanor "may be sentenced to pay ... a fine of no more than ... $5000". Because Hillman has suffered a forfeiture of property worth $8000 (and has additionally been ordered to pay an unsuspended fine of $1500), he argues that his total monetary penalty exceeds the $5000 ceiling set by AS 12.55.035(b).

Hillman's argument is premised on two assumptions. First, Hillman assumes that AS 12.55.035 limits not only the penalties that can be imposed for violation of state statutes but also the penalties that municipalities can impose for violation of their own ordinances. Second, Hillman assumes that AS 12.55.035 governs (and limits) forfeitures as well as fines.

Even taking Hillman's first assumption to be true (that is, even assuming that AS 12.55.035 governs the penalties for violation of municipal ordinances), we reject Hillman's contention that AS 12.55.035 limits forfeitures. There is nothing in the statutory language to indicate this, and Hillman cites no legislative history or case authority to support his contention that the legislature used the word "fine" to mean both "fine" and "forfeiture".[5] We therefore reject Hillman's contention that AS 12.55.035(b) sets a $5000 limit on vehicle forfeitures imposed as a penalty for driving while intoxicated.

The judgement of the district court is AFFIRMED.

---

**5.** We note that state law provides for forfeiture of a repeat drunk driver's motor vehicle or aircraft. *See* AS 28.35.036. Motor vehicles and aircraft often are worth far more than $5000. If the legislature had intended to limit these forfeitures to $5000, it seems likely that the legislature would have included language expressly and clearly establishing such a limitation.